**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-mj-8457-RMM**

**UNITED STATES OF AMERICA**

**v.**

**DALLAS LITTLE,**
**ALONZO LITTLE,**
**LARRY LITTLE,**
**TARON FURLOW, and**
**CAMARON FURLOW,**

**Defendants.**
_____/

FILED BY____SP____D.C.

**Jun 18, 2026**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?_No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

5. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No

JASON REDING QUIÑONES
UNITED STATES ATTORNEY

By: _Juan Albino_

JUAN ALBINO
ASSISTANT UNITED STATES ATTORNEY
SDFL Court ID No. A5503412
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
Telephone: (561) 820-8711
Juan.Albino@usdoj.gov

AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>DALLAS LITTLE,<br>ALONZO LITTLE,<br>LARRY LITTLE,<br>TARON FURLOW, and<br>CAMARON FURLOW, | )<br>)<br>)<br>)<br>)<br>) |

*Defendant(s)*

Case No.   26-mj-8457-RMM

FILED BY_____SP_____D.C.

Jun 18, 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   October 2025, December 2025, June 2026   in the county of   Palm Beach   in the
Southern   District of   Florida   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm by Dallas Little; |
| ~~18 U.S.C. § 933~~ | ~~Conspiracy to transfer firearms to another person in or otherwise affecting interstate or foreign commerce by Dallas Little and Alonzo Little;~~   No PC RMM |
| 18 U.S.C. § 924(c) | Possession of a firearm in furtherance of a drug trafficking crime by Dallas Little, Alonzo Little, Larry Little, Taron Furlow, and Camaron Furlow; |
| 21 U.S.C. §§ 841(b)(1)(A) and 846 | Conspiracy to distribute a controlled substance by Dallas Little, Alonzo Little, Larry Little, Taron Furlow, and Camaron Furlow. |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

MATTHEW WARD (Affiliate)

Digitally signed by
MATTHEW WARD (Affiliate)
Date: 2026.06.18 10:14:51
-04'00'

*Complainant's signature*

TFO Matthew Ward, ATF

*Printed name and title*

Sworn and Attested to me by Applicant by Telephone (FaceTime) pursuant to Fed. R. Crim. P. 4(d) and 4.1

Date:   6/18/26

*Judge's signature*

City and state:   West Palm Beach, FL

Hon. Ryon M. McCabe, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION FOR A CRIMINAL COMPLAINT**

I, Matthew Ward, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      Your Affiant is currently a Task Force Officer (TFO) with the Bureau of Alcohol, Tabaco, Firearms, and Explosives (ATF) and has served in that capacity since November 2020. As a TFO your affiant has been specially deputized by the United States Marshals Service and authorized to enforce federal law, to include offenses occurring under Titles 18 and 21 of the United States Code. Your affiant is also a duly sworn Police Officer employed by the City of West Palm Beach Police Department (WPBPD) for the last twelve (12) years. Some of your affiant's responsibilities as a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) include investigating violations of federal law, including violations of the Gun Control Act (Title 18 United States Code, Chapter 44).

2.      During my tenure as a law enforcement officer, your affiant has participated in over 50 investigations, arrests and subsequent debriefings of individuals who were arrested for possessing firearms in furtherance of violent and/or drug trafficking crimes.  In addition, during my tenure with the West Palm Beach Police Department, I have arrested individuals for various drug violations, and have spoken with and interviewed in excess of 100 drug dealers, drug users, and informants concerning the methods and practices of drug traffickers. I have also participated in the interviews of at least 50 persons who were involved in possession or distribution of controlled substances. I have served as the affiant on at least 25 prior search warrants seeking judicial authorization to search cellular phones for evidence relating to drug dealing and/or prohibited persons in possess of firearms. I have participated as a surveillance agent and assisted in monitoring calls in two separate wiretaps, which involves listening to drug dealing related phone

calls, and surveilling the conspirators involved in drug trafficking organizations. I have also participated in at least 50 prior legally authorized searches involving drug dealers and/or persons prohibited to possess firearms. I have also conducted over 25 investigations involving the identification of co-conspirators, and customers of drug dealers, and felons in possession of firearms, through the use of telephone records and bills, financial records, text messages, digital photographs stored within seized cellular phone devices, drug ledgers, photographs, and other documents.

## **PURPOSE OF AFFIDAVIT**

3.      I make this affidavit in support of criminal complaints and arrest warrants against:

a)      Dallas LITTLE for violations of; Title 18 United States Code § 922(g)(1), Possession of a firearm by prohibited person (Convicted Felon); Title 18 United States Code § 933, did knowingly transfer firearms to another person knowing or having reasonable cause to believe that the use, carrying, or possession of such firearms by the recipient would constitute a felony; Title 18 United States Code § 924(c) use and/or carrying of a firearm during and in relation to a drug trafficking crime; Title 21 U.S.C. §§ 846 and 841(b)(1)(A) conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

b)      Alonzo LITTLE for violations of 18 United States Code § 933, Title 18 United States Code § 933, did knowingly transfer firearms to another person knowing or having reasonable cause to believe that the use, carrying, or possession of such firearms by the recipient would constitute a felony; Title 18 United States Code § 924(c) use and carrying

of a firearm during and in relation to a drug trafficking crime; Title 21 U.S.C. §§ 846 and 841(b)(1)(A) conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

c)      Larry LITTLE for violations of Title 18 United States Code § 924(c) use and carrying of a firearm during and in relation to a drug trafficking crime; Title 21 U.S.C. §§ 846 and 841(b)(1)(A) conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

d)      Taron FURLOW for violations of Title 18 United States Code § 924(c) use and carrying of a firearm during and in relation to a drug trafficking crime; Title 21 U.S.C. §§ 846 and 841(b)(1)(A) conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

e)      Camaron FURLOW for violations of Title 18 United States Code § 924(c) use and carrying of a firearm during and in relation to a drug trafficking crime; Title 21 U.S.C. §§ 846 and 841(b)(1)(A) conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

4.      The statements contained in this Affidavit are based on my personal knowledge, as well as information provided by other individuals, including other law enforcement officials and my review of records and other evidence obtained during the course of this investigation. I have included only those facts that I believe are necessary to establish probable cause in support of an arrest warrant.

## **PROBABLE CAUSE**

### **Controlled Purchase of Firearm – October 10, 2025**

5.      On or about October 10, 2025, an ATF Undercover Agent ("UC"), exchanged communications with Dallas LITTLE to arrange the purchase of one (1) firearm from Dallas LITTLE to take place on October 10, 2025. Dallas LITTLE agreed to conduct the purchase at the gas station, located at 1400 S Main St, Belle Glade, FL, in the Southern District of Florida. All phone conversations were audio preserved and all text communications were preserved.

6.      On or about October 10, 2025, in the late afternoon hours, the ATF UC, equipped with audio/video recording equipment and ATF Investigative Funds, arrived at the gas station, located at 1400 S Main St, Belle Glade, FL. Upon arrival, the UC parked the UC vehicle in the parking lot of the gas station and awaited Dallas LITTLE's arrival. Shortly after, the UC observed Dallas LITTLE arrive at the gas station in a black Dodge Charger bearing Florida License Plate "38EUHT". Dallas LITTLE was accompanied by his brother Alonzo LITTLE. Dallas LITTLE then exited the Dodge Charger and made contact with the UC.  The UC exited the UC vehicle and opened the trunk of the UC vehicle. Dallas LITTLE then placed a black plastic rifle case in the trunk of the UC vehicle. The UC subsequently opened the case and observed an Anderson Manufacturing AM-15 AR style 5.56 caliber pistol bearing serial number 21203945, a Black AR Pistol receiver blank with attached pistol brace, assorted ammunition, rifle magazines, and a

receipt for a Rock Island Armory PF14 12 Ga pump shotgun bearing serial number 40-02531 purchased from cheaperthandirt.com. Dallas LITTLE then showed the UC how the firearm previously was jammed, but Dallas LITTLE fixed the firearm when he was shooting it and now it works.

7. The UC then provided Dallas LITTLE with $1,700 in ATF Investigative Funds in exchange for the aforementioned firearm and firearm parts and accessories. The UC then had a brief conversation with both Dallas LITTLE and his brother Alonzo LITTLE regarding future purchases of firearms. After additional brief conversation regarding the sale of firearms, the UC concluded the conversation, entered the UC vehicle, and departed the deal location.

8. A records check of the National Crime Information Center indicates that Dallas LITTLE was previously convicted of a felony in Lee County Florida under Florida court case #362016CF018719000ACH on or about February 13, 2017, for Robbery.

9. A query with the Florida Office of Executive Clemency did not indicate that LITTLE had the right to possess a firearm restored.

10. A preliminary examination of the Anderson Manufacturing AM-15 AR style 5.56 caliber pistol bearing serial number 21203945 revealed the firearm was not manufactured in the State of Florida and traveled in interstate commerce.

**Controlled Purchase of Firearms – December 9, 2025**

11. On or about December 9, 2025, an ATF Undercover Agent ("UC-1"), exchanged communications with Dallas LITTLE and Alonzo LITTLE to arrange the purchase of two (2) firearms from Dallas LITTLE and Alonzo LITTLE to take place on December 9, 2025. Dallas LITTLE and Alonzo LITTLE agreed to conduct the purchase at the gas station, located at 1400 S

Main St, Belle Glade, FL, in the Southern District of Florida. All phone conversations were audio preserved and all text communications were preserved.

12.     On or about December 9, 2025, in the early afternoon hours, ATF Undercover Agent's UC-1 and UC-2, equipped with audio/video recording equipment and ATF Investigative Funds, arrived at the gas station, located at 1400 S Main St, Belle Glade, FL. Upon arrival the black Dodge Charger bearing Florida License Plate "38EUHT" previously driven by Dallas LITTLE was already at the location. After ATF UC-1 parked, Alonzo LITTLE exited the black Dodge Charger and met with UC-1 and UC-2 between the vehicles. Eventually, Alonzo LITTLE opened the rear passenger side door of his vehicle and revealed a plastic case containing a shotgun. The ATF UC-1 asked Alonzo LITTLE the price for the shotgun and Alonzo LITTLE responded with, "$400.00". The shotgun was a Sun City Stevens Model 320 12ga Shotgun.

13.     At the same time Alonzo LITTLE retrieved a backpack from the driver's side of his vehicle and removed a black plastic case from inside the backpack. UC-1 and UC-2 subsequently placed the shotgun into the rear passenger compartment of the Undercover Vehicle (UCV). Alonzo LITTLE then opened the black plastic case and showed UC-1 a Black Beretta Model 92FS 9mm Pistol. The case contained an additional magazine. Alonzo LITTLE stated that he wanted $600 for the pistol.

14.     UC-2 began discussing with LITTLE what happens with the firearms being sold to the UC's as Alonzo LITTLE had inquired. UC-2 told Alonzo LITTLE that the firearms Alonzo LITTLE and Dallas LITTLE are selling will be transported to New York, and from there the firearms will be transported across international lines into Canada. UC-2 stated that the pricing for firearms in Canada is much higher than in the United States, which is where the UC's make their

money. UC-2 went on to say that the firearms were being sold to "Hells Angels" and "Chinese Mafia" in Canada, which are criminal enterprises currently operating within Canada.

15.     After this conversation related to what the UC's were doing with the firearms, UC-2 took possession of the black plastic case and Beretta pistol and placed it into the rear passenger compartment of the UCV next to the shotgun.

16.     At the same time UC-1 was discussing with Alonzo LITTLE future firearm sales, including a fully-automatic "Mac" which the LITTLE brothers had previously discussed selling to UC-1. During this conversation, Alonzo LITTLE stated that there were potentially additional firearms that he and his brother, Dallas LITTLE, would be obtaining from an unidentified firearm source that they would be willing to sell to UC-1 and UC-2. UC-2 then reiterated that he is in charge of the operation and would be willing to purchase the fully-automatic firearm if the LITTLE brother's were able to sell it. Alonzo LITTLE then went on to say that he was working with his "twin" brother, who law enforcement has previously identified as Dallas LITTLE. UC-1 then provided Alonzo LITTLE with $1000 of ATF investigative funds. UC-1 and UC-2 concluded the conversation, entered the UC vehicle, and departed the deal location.

17.     A records check of the National Crime Information Center indicated that Alonzo LITTLE has not been convicted of a felony. He did however conspire, with Dallas LITTLE, to transfer firearms to another person (UC-1) in or otherwise affecting interstate or foreign commerce.

18.     A preliminary examination of the Sun City Stevens Model 320 12ga Shotgun bearing serial number 212421W and the Black Beretta Model 92FS 9mm Pistol bearing serial number BER79331, revealed the firearms were not manufactured in the State of Florida and traveled in interstate commerce.

**Controlled Purchase of Firearms – December 16, 2025**

19.     On or about December 16, 2025, an ATF Undercover Agent ("UC-1"), exchanged communications with Dallas LITTLE and Alonzo LITTLE to arrange the purchase of three (3) firearms from Dallas LITTLE and Alonzo LITTLE to take place on December 16, 2025. Dallas LITTLE and Alonzo LITTLE agreed to conduct the purchase at the gas station, located at 1400 S Main St, Belle Glade, FL, in the Southern District of Florida. All phone conversations were audio preserved and all text communications were preserved.

20.     On or about December 16, 2025, in the early afternoon hours, ATF Undercover Agent's UC-1 and UC-2, equipped with audio/video recording equipment and ATF Investigative Funds, arrived at the gas station, located at 1400 S Main St, Belle Glade, FL. Upon arrival the black Dodge Charger bearing Florida License Plate "38EUHT" occupied by Alonzo LITTLE was already in the parking lot.

21.     UC-1 and UC-2 exited the UCV and met with Alonzo LITTLE. Alonzo LITTLE opened the trunk of his vehicle and retrieved a black hard plastic rifle case. Alonzo LITTLE opened the case at the rear of his vehicle, the case contained numerous firearms, magazines, and ammunition to include a Smith and Wesson Model M&P15 5.56 Cal AR-style Rifle bearing serial number: TS60428, a Masterpiece Arms Model Defender 9mm Pistol bearing serial number: FX26795, a Spikes Tactical Model ST15 6.5 Grendel Caliber AR-style Pistol bearing serial number: NSL104424 with a magazine containing 23 rounds of 6.5 Grendel centerfire ammunition, a spent shell casing marked "5.56""PPU", three (3) 9mm magazines for an MPA Defender pistol containing a total of twenty-eight (28) rounds of 9mm ammunition.

22.     While discussing the firearms in the black hard case, Alonzo LITTLE stated that the Smith and Wesson Model M&P15 Rifle was his firearm that he was selling to the UC's but that the other two firearms belonged to a female that he was selling the firearms for.

23.     At this time, UC-1 provided LITTLE with $3000 of ATF investigative funds in exchange for the abovementioned items. UC-1 and UC-2 concluded the conversation, entered the UC vehicle, and departed the deal location.

24.     A preliminary examination of the Smith and Wesson Model M&P15 5.56 Cal AR-style Rifle bearing serial number: TS60428, the Masterpiece Arms Model Defender 9mm Pistol bearing serial number: FX26795, revealed the firearms were not manufactured in the State of Florida and traveled in interstate commerce. The Spikes Tactical Model ST15 6.5 Grendel Caliber AR-style Pistol bearing serial number: NSL104424, was determined to have traveled in interstate commerce.

**Armed Protection Meeting Scenario – June 10, 2026**

25.     In the weeks leading up to June 10, 2026, an ATF Undercover Agent ("UC-1"), exchanged communications with Dallas LITTLE and Alonzo LITTLE to organize the meeting of a fictitious drug transaction. On the date of the meeting Alonzo LITTLE notified UC-1 via recorded text messages that himself, Dallas LITTLE, and their "cousin" hereinafter referred to as the "crew" would be meeting UC-1 at a pre-determined location, 7025 Southern Boulevard, West Palm Beach, FL in the Southern District of Florida.

26.     Shortly after UC-1 arrived at the business they observed the black Dodge Charger bearing Florida License Plate "38EUHT" enter the parking lot. Alonzo LITTLE parked next to UC-1 and exited the driver seat of the vehicle along with Dallas LITTLE and "Cam." The three (3) individuals, the "crew", entered the UC vehicle driven by UC-1. Once inside the UC vehicle

UC-1 asked if the "crew" was in possession of any firearms or anything else needed for protection, and all indicated they were armed. The crew was informed by UC-1 to leave their firearms inside of their vehicle. The three (3) individuals then exited the UC Vehicle, placed the firearms into the Black Dodge Charger, and re-entered the UC Vehicle. While driving to the primary location, UC-1 spoke in detail with Alonzo LITTLE, Dallas LITTLE, and "Cam" about what their role in the drug transaction would be. During this discussion Alonzo LITTLE, Dallas LITTLE, and "Cam" all confirmed they were interested in participating as security during future transactions.

27.     Upon arrival at the primary location UC-1, Alonzo LITTLE, Dallas LITTLE, and "Cam" are introduced to an additional ATF Undercover Agent, hereinafter referred to as UC-2, where they discuss how the drug transaction would occur. UC-2 explained to all three (3) individuals the narcotics deal would be for three and a half (3.5) Kilograms of Methamphetamine. UC-2 informed the three (3) individuals they would observe the drug transaction so they could understand the process on future deals.

28.     UC-1, UC-2 and several ATF Undercover Agents then completed the simulated narcotics transaction with Alonzo LITTLE, Dallas LITTLE, and "Cam" all present. During that transaction a bag containing numerous bundles of "sham" or fake methamphetamine was present. The "sham" was weighed by Undercover Agents utilizing a digital scale and it was stated that "two were in keys, and one and a half in plastic." Referring to two (2) packages of the "sham" were in kilogram packaging while the remainder were in plastic bags. UC-2 then pulled out one (1) clear plastic bag containing "sham" methamphetamine, identified it as a "P" or a pound and showed the crystals inside the bag. The additional ATF Undercover Agent then provided UC 2 with U.S. currency for the purchase of the methamphetamine.  After the deal had concluded UC2 provided UC-1 with $2000.00 dollars in U.S. currency of "proceeds" from the simulated narcotics

transaction to pay Dallas LITTLE, Alonzo LITTLE, and "Cam" for taking part in the narcotics transaction. UC-1 then provided each individual with $500.00 dollars each for traveling to watch the deal, and Alonzo LITTLE with an additional $500.00 due to a prior arranged meeting that was not completed.

29.     At the conclusion of the meeting Alonzo LITTLE, Dallas LITTLE and "Cam" were asked if they had any questions about what occurred by UC-2 and all stated "no." UC-2 then discussed with all three (3) individuals what their availability would be to provide protection for a future deal of "six key's or 12 pounds." While UC-2 discussed with the three (3) individuals if they had any recommendation on things they would change and then again told the three (3) individuals to "sleep on it and see if it is something you want to do," giving the group an opportunity to not take part in future deals if they did not want to. Dallas LITTLE said that they benefitted from coming to the meeting to see the operation. After further discussion UC-1 transported the three (3) individuals back to their vehicle at 7025 Southern Boulevard, West Palm Beach, FL.

### Armed Protection Scenario – June 17, 2026

30.     On or about June 17, 2026, an ATF Undercover Agent ("UC-1"), exchanged communications with Dallas LITTLE and Alonzo LITTLE to organize the protection of a simulated drug transaction. On the date of the meeting Alonzo LITTLE notified UC-1 via recorded text messages that he and four (4) other individuals were on their way to meet UC-1 at a pre-determined location, 7025 Southern Boulevard, West Palm Beach, FL in the Southern District of Florida.

31.     After UC-1 arrived at the meeting location he observed the black Dodge Charger bearing Florida License Plate "38EUHT" enter the parking lot. Upon parking, Alonzo LITTLE,

Dallas LITTLE, Larry LITTLE, Taron FURLOW, Camaron FURLOW, hereinafter referred to as "the crew" exited the vehicle and made contact with UC-1. At that time UC-1 observed all of the individuals were in possession of handgun style firearms other than Dallas LITTLE. Upon arrival Alonzo LITTLE approached the UC Vehicle and requested that UC-1 provide a bag to be used to conceal firearms, due to "the crew" not having a bag. This was previously discussed between UC-1 and Alonzo LITTLE. UC-1 then exited the UC vehicle went to the open trunk of the Dodge Charger with Dallas LITTLE and Alonzo LITTLE where Alonzo LITTLE asked Dallas LITTLE if he wanted the "shotgun or the AR?" referring to the multiple firearms UC-1 witnessed in the trunk of the vehicle. Dallas LITTLE replied that he wanted the AR-style rifle at which time Alonzo LITTLE took the AR style Rifle from the trunk and placed it into the green duffle bag provided to him by UC-1. Subsequently all members of the crew entered the UC Vehicle and UC-1 placed the green bag into the trunk.

32.     UC-1 and "the crew" then proceeded to the primary location. While traveling in the UC Vehicle, UC-1 asked Alonzo LITTLE "everyone knows what is going on, like what is actually happening," and Alonzo LITTLE stated "yeah". UC-1 then asked "hey if anybody's not about it dude, then just now is the time to let me know and we can just leave you here or whatever, it's all good. Everyone straight?" In response Alonzo LITTLE and Taron FURLOW stated "yeah" and nodded their heads indicating then understood.

33.     Upon arrival UC-1, Alonzo LITTLE, Dallas LITTLE, Larry LITTLE, Taron FURLOW, Camaron FURLOW made contact with UC-2. UC-2 then provided "the crew" the details of the drug transaction to include the transaction being for eight (8) pounds of Methamphetamine. While discussing the narcotics transaction, UC-2 pointed to Taron FURLOW and Larry LITTLE and stated, "are you guys good with it?" FURLOW and LITTLE nodded their

heads in agreement stating "yeah." It should be noted at this time all members of "the crew" were armed with firearms.

34. Once "the crew" agreed to provide armed security for the eight (8) pound Methamphetamine transaction, while armed, they all took positions along the walls of the undercover location. UC-2 then placed a phone call to additional undercover ATF personnel posing as narcotics purchasers. Upon their arrival, the ATF undercover purchasers spoke with UC-2 regarding additional narcotics transactions to include the Methamphetamine, specifically the weight, being purchased during this meeting. UC-2 then contacted ATF undercovers posing as narcotics couriers to bring the eight (8) pounds of Methamphetamine to the deal location. Shortly after, the undercover courier arrived to the deal location and provided UC-2 with a bag containing the eight (8) pounds of Methamphetamine. UC-2 took the bag containing eight (8) pounds of Methamphetamine and removed it to show the undercover purchasers. During that time the eight (8) pounds of Methamphetamine were able to be observed by all people inside the undisclosed location. UC-2 then placed the Methamphetamine on a digital scale and weighed the narcotics, which again was seen by all people in the undercover location. The undercover purchasers then placed a call to an undercover posing as the purchaser's courier. This courier then arrived to the undercover deal location and provided $16,000 dollars in ATF investigative funds to the undercover purchasers. At this time eight (8) pounds of Methamphetamine and the $16,000 dollars in ATF investigative funds were exchanged between UC-2 and the undercover purchasers. It should be noted that the entirety of the transaction listed above was observed by Alonzo LITTLE, Dallas LITTLE, Larry LITTLE, Taron FURLOW, Camaron FURLOW, who were all armed with loaded firearms during the entirety of the simulated narcotics transaction. After the simulated

transaction, both couriers who were again in possession of the eight (8) pounds of Methamphetamine and $12,000 dollars of ATF investigative funds left the deal location.

35.     After the deal had concluded, UC-2 provided UC-1 with the remaining $4000.00 dollars in U.S. currency of "proceeds" from the simulated narcotics transaction to pay each member of "the crew" for providing armed protection of the simulated narcotics transaction. UC-2 then instructed all the members of "the crew" to place their firearms in the green duffle bag and place the duffle bag in the back on the UC vehicle.  UC-1 then provided each member of "the crew" with $700.00 dollars in US currency from the proceeds of the simulated Methamphetamine transaction.

36.     UC-1 and UC-2 then exited the undisclosed location at which time all individuals were taken into custody by members of the Palm Beach County Sheriff's Office. The firearms and individuals in possession of those firearms are listed below.

    a)  Larry LITTLE was in possession of a Shadow Systems, Model DR920P (Serial#SSX072565) 9mm pistol, an extended magazine and eighteen (18) rounds of 9mm ammunition.

    b)  Taron FURLOW was in possession of a Canik, Model TP9DA (Serial#24BJ00606) 9mm pistol, an extended magazine and sixteen (16) rounds of 9mm ammunition.

    c)  Alonso LITTLE was in possession of a Canik, Model TP9SFX (Serial#25BC02530) 9mm pistol, an extended magazine and eighteen (18) rounds of 9mm ammunition.

    d)  Dallas LITTLE was in possession of a Privately Made Firearm (PMF), devoid of a serial number 6.8 caliber rifle and five (5) rounds of Hornady 6.8 caliber ammunition.

    e)  Camaron FURLOW was in possession of a Smith & Wesson, Model M&P (Serial#DYA9089) 9mm pistol, an extended magazine and twenty (20) rounds of 9mm ammunition.

## CONCLUSION

37.     Based on the foregoing facts, I respectfully submit that there is probable cause to believe the aforementioned violations stated in paragraph three (3) of this affidavit exist.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Respectfully submitted,

MATTHEW WARD (Affiliate)

Digitally signed by MATTHEW WARD (Affiliate)
Date: 2026.06.18 10:17:08 -04'00'

_____
Matthew Ward, Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by FaceTime, on this 18 day of June 2026, at West Palm Beach, Florida

_____
HONORABLE RYON M. MCCABE
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**: Dallas Little

**Case No**:

Count #: 1

<u>Felon in Possession of a Firearm</u>

<u>18 U.S.C. § 922(g)(1)</u>
**\* Max. Term of Imprisonment: 15 years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: 3 years**
**\* Max. Fine: $250,000**
**\* Special Assessment: $100 upon conviction**

Count #: 2

<u>Conspiracy to transfer firearms to another person in or otherwise affecting interstate or</u>

<u>foreign commerce</u>

<u>18 U.S.C. § 933</u>
**\* Max. Term of Imprisonment: 15 years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: 3 years**
**\* Max. Fine: $250,000**
**\* Special Assessment: $100 upon conviction**

Count #: 3

<u>Possession of a firearm in furtherance of a drug trafficking crime</u>

<u>18 U.S.C. § 924(c)</u>
**\* Max. Term of Imprisonment: Life**
**\* Mandatory Min. Term of Imprisonment (if applicable): 5 years**
**\* Max. Supervised Release: 5 years**
**\* Max. Fine: $250,000**
**\* Special Assessment: $100 upon conviction**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Count #: 4

Conspiracy to distribute a controlled substance

21 U.S.C. §§ 841(b)(1)(A) and 846
* **Max. Term of Imprisonment: Life**
* **Mandatory Min. Term of Imprisonment (if applicable): 10 years**
* **Max. Supervised Release: Life**
* **Max. Fine: $10,000,000**
* **Special Assessment: $100 upon conviction**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**: Alonzo Little

**Case No**:

Count #: 2

<u>Conspiracy to transfer firearms to another person in or otherwise affecting interstate or foreign commerce</u>

<u>18 U.S.C. § 933</u>
**\* Max. Term of Imprisonment: 15 years**
**\* Mandatory Min. Term of Imprisonment (if applicable): N/A**
**\* Max. Supervised Release: 3 years**
**\* Max. Fine: $250,000**
**\* Special Assessment: $100 upon conviction**

Count #: 3

<u>Possession of a firearm in furtherance of a drug trafficking crime</u>

<u>18 U.S.C. § 924(c)</u>
**\* Max. Term of Imprisonment: Life**
**\* Mandatory Min. Term of Imprisonment (if applicable): 5 years**
**\* Max. Supervised Release: 5 years**
**\* Max. Fine: $250,000**
**\* Special Assessment: $100 upon conviction**

Count #: 4

<u>Conspiracy to distribute a controlled substance</u>

<u>21 U.S.C. §§ 841(b)(1)(A) and 846</u>
**\* Max. Term of Imprisonment: Life**
**\* Mandatory Min. Term of Imprisonment (if applicable): 10 years**
**\* Max. Supervised Release: Life**
**\* Max. Fine: $10,000,000**
**\* Special Assessment: $100 upon conviction**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>Larry Little</u>

**Case No**:

Count #: 3

<u>Possession of a firearm in furtherance of a drug trafficking crime</u>

<u>18 U.S.C. § 924(c)</u>
**\* Max. Term of Imprisonment: Life**
**\* Mandatory Min. Term of Imprisonment (if applicable): 5 years**
**\* Max. Supervised Release: 5 years**
**\* Max. Fine: $250,000**
**\* Special Assessment: $100 upon conviction**

Count #: 4

<u>Conspiracy to distribute a controlled substance</u>

<u>21 U.S.C. §§ 841(b)(1)(A) and 846</u>
**\* Max. Term of Imprisonment: Life**
**\* Mandatory Min. Term of Imprisonment (if applicable): 10 years**
**\* Max. Supervised Release: Life**
**\* Max. Fine: $10,000,000**
**\* Special Assessment: $100 upon conviction**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: Taron Furlow

**Case No**:

Count #: 3

Possession of a firearm in furtherance of a drug trafficking crime

18 U.S.C. § 924(c)
**\* Max. Term of Imprisonment: Life**
**\* Mandatory Min. Term of Imprisonment (if applicable): 5 years**
**\* Max. Supervised Release: 5 years**
**\* Max. Fine: $250,000**
**\* Special Assessment: $100 upon conviction**

Count #: 4

Conspiracy to distribute a controlled substance

21 U.S.C. §§ 841(b)(1)(A) and 846
**\* Max. Term of Imprisonment: Life**
**\* Mandatory Min. Term of Imprisonment (if applicable): 10 years**
**\* Max. Supervised Release: Life**
**\* Max. Fine: $10,000,000**
**\* Special Assessment: $100 upon conviction**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: Camaron Furlow

**Case No**:

Count #: 3

Possession of a firearm in furtherance of a drug trafficking crime

18 U.S.C. § 924(c)
**\* Max. Term of Imprisonment: Life**
**\* Mandatory Min. Term of Imprisonment (if applicable): 5 years**
**\* Max. Supervised Release: 5 years**
**\* Max. Fine: $250,000**
**\* Special Assessment: $100 upon conviction**

Count #: 4

Conspiracy to distribute a controlled substance

21 U.S.C. §§ 841(b)(1)(A) and 846
**\* Max. Term of Imprisonment: Life**
**\* Mandatory Min. Term of Imprisonment (if applicable): 10 years**
**\* Max. Supervised Release: Life**
**\* Max. Fine: $10,000,000**
**\* Special Assessment: $100 upon conviction**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**